TRENT TURNER      *      NO. 2025-CA-0292

VERSUS      *

KATHLEEN CRESSON      *      COURT OF APPEAL

     *      FOURTH CIRCUIT

     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2024-08418, DIVISION "H"
HONORABLE LaKeisha N. Jefferson,
* * * * * *
**Chief Judge Roland L. Belsome**
* * * * * *

(Court composed of Chief Judge Roland L. Belsome, Judge Karen K. Herman, Judge Monique G. Morial)

James A. Graham, Jr.
Sharon Dell Williams
Erin E. Rumsey
LAW OFFICE OF JAMES A. GRAHAM, LLC
701 Loyola Avenue, Suite 403
New Orleans, LA 70113

     COUNSEL FOR PLAINTIFF/APPELLEE

Kathleen Claire Cresson
CRESSON LAW FIRM
221 N. Clark Street
New Orleans, LA 70119-5209

     COUNSEL FOR DEFENDANT/APPELLANT

                            **REVERSED AND RENDERED**
                               **OCTOBER 21, 2025**

RLB

KKH

MGM

Appellant in this action seeks sanctions in the form of attorney's fees and costs for an allegedly frivolous filing. For the reasons below, we reverse and render judgment in favor of Appellant.

This case was instituted by Trent Turner ("Appellee"), who filed a petition alleging that Kathleen Cresson ("Appellant") had committed acts that constitute sexual assault and sought a protective order under Protection for Victims of Sexual Assault Act**,** La. R. S. 46:2181, *et seq*. Appellant responded by filing an answer that denied Appellee's allegations and asserted a reconventional demand for costs and attorney's fees as sanctions for Appellee's allegedly false and frivolous filing. Appellee also made a formal police complaint against Appellant raising the same allegations. The parties each filed several motions and made a number of court appearances on pretrial motions and for trial dates that were continued. On January 10, 2025, Appellee filed a voluntary motion to dismiss his "Petition for Protection from Stalking and Sexual Assault." On January 16, 2025, the trial court orally granted Appellee's motion to dismiss and took up the trial on the merits of Appellant's reconventional demand.

At the conclusion of trial[1] on January 16, 2025, the judge orally ruled that Appellee's petition was not frivolous and dismissed Appellant's petition denying all relief. A written judgment in accord with the oral ruling followed on February 4, 2025.

On this devolutive appeal, Appellant challenges the trial court's determination that the petition was not frivolous and renews her request for sanctions.

***Relevant facts***

Appellant and Appellee have a contractual relationship as lessor and lessee respectively. Appellant is an attorney whose office is located approximately 120 feet from Appellee's rented apartment. From the office property, Appellant could see into Appellee's apartment because Appellee failed to use curtains or drapes that would have protected his apartment from outside viewers.

On August 6, 2024, Appellant was leaving her office with a client when she noticed that Appellee and his girlfriend appeared to be engaging in intimate relations in full view of the public because of the open curtains. Wishing to confront her tenant and demand that he close the curtains at such moments, Appellant retrieved her telephone and attempted to take video photographs of the activities. By the time she secured her phone and returned to record the video, the activities had ended and the video images showed only the two participants in the apartment. Appellant alleges that on the following day, August 7, 2024,

---

[1] On the January 16, 2025 trial date, Appellee gave his testimonial oath, but neither party testified and no exhibits were offered. The trial court heard oral argument on Appellant's reconventional demand and rendered judgment on that basis.

Appellee's girlfriend began dancing in front of the window wearing little or no clothing. Appellant acknowledges that she recorded that as well.[2]

Appellant arranged a meeting to "inspect" Appellee's apartment on August 8, 2024. From the pleadings and the evidence, it appears that the true purpose of the meeting was for Appellant to confront her lessee and demand that he discontinue behavior that she deemed indecent. She discussed additional alleged breaches of the lease as well. Chief among those breaches was Appellant's contention that Appellee's girlfriend appeared to be a full-time occupant in the apartment in violation of certain lease provisions.[3] In the course of the discussion, Appellant revealed that she had video proving that he and his girlfriend were engaged in lewd acts (as Appellant described them) in full view of the public and demanded that he begin covering his windows during intimate moments. Appellant argues that her concern was the protection of the children who lived in the neighborhood as well as the impact that Appellee's public displays might have on her ability to conduct business at her office. Appellee demanded the delivery of the video and that Appellant delete the video from her phone. Appellant refused both demands.

Appellee abandoned the apartment shortly after the confrontation.[4] On September 10, 2024, Appellee filled in the blanks in a form petition with the assistance of a non-profit legal assistance agency. The form petition was filed on

---

[2] Appellant did not testify at trial. The acknowledgment of this activity is in the form of her pleadings, email to Appellee and oral argument on her own behalf at trial and on appeal.

[3] The lease provided that Appellee would be the sole occupant in the apartment. Appellant alleged that additional occupants would increase costs of maintaining the apartment, especially certain utilities that were shared by other tenants in the same apartment building.

[4] The record does not reveal the exact date of Appellee's departure from the apartment, however, it was sometime between August 10 and September 10, 2024. In pleadings, Appellant alleges that Appellee left the apartment on September 1, 2024. At oral argument, Appellee's counsel acknowledged that Appellee had vacated the property prior to the filing of his petition.

4

September 13, 2024.  On the blanks requiring his address, Appellee lists an address in a zip code different from his former apartment.  In the petition, Appellee alleges that 1) Appellant committed sexual assault on him in violation of La. R. S. 46:2181, *et seq*, by sending an electronic communication of a sexually explicit photograph to him; and 2) Appellant viewed or spied on him at his residence without consent for her sexual gratification.  In the portion of the form that suggests various types of relief for selection by the petitioner, Appellee selected requests for orders 1) prohibiting Appellant from abusing, harassing, assaulting, stalking or threatening him; 2) prohibiting Appellant from contacting him by any means; 3) ordering Appellant to stay away from his place of employment; and 4) ordering Appellant not to damage his belongings, shut off his utilities or interfere with his living conditions. The petition was filed in the Domestic Relations Section of the Civil District Court for the Parish of Orleans ("DRS").  The trial court granted the protective order *ex parte*.

In addition to the civil petition, Appellee also made a report to the New Orleans Police Department ("NOPD") accusing Appellant of video voyeurism as defined by La. R.S. 14:283.  The police report is based on the same facts set forth in Appellee's petition.  Appellant argued at trial that the matter was assigned to the sexual crimes unit and was still an open investigation as of the time of trial.

Appellant's oral argument in support of her reconventional demand on the date of trial raised a number of factual inaccuracies and procedural failures in Appellee's filing.

Appellee alleged in his petition that the videos taken by the Appellant were recorded for her sexual gratification which would be a basis for a protective order because such an act would constitute video voyeurism in violation of La. R.S.

5

14:283(A)(1) if proven.[5]   The allegation in the petition is directly contradicted by Appellee's trial testimony:

> The Court:   Do you have any physical evidence that she used the video or took the video for her own sexual gratification? That's what she is asking you. You have any physical proof?
>
> Turner:   I guess not, no.

Appellee's petition also alleges that, Appellant intentionally assaulted him by sending an electronic communication containing sexually explicit materials or content to him without his consent. Appellee's petition does not identify the alleged sexually explicit materials, but his testimony at trial relates only to the scenes depicted in the videos recorded by Appellant on August 6 and 7, 2024. Sending sexually explicit materials by electronic communication meets the definition of the crime of video voyeurism under La. R. S. 14:283(A)(2), which provides:

> A. Video voyeurism is any of the following:
> …
> (2) The transfer of an image obtained by activity described in Paragraph (1) of this Subsection by live or recorded telephone message, electronic mail, the Internet, or a commercial online service.

Appellee's testimony on this point proves that this allegation of his petition was false.  He testified as follows:

> Cresson:   But just for the record, I did refuse to send the video over the internet, right?
>
> Turner:   That is correct.

---

[5] La. R. S. 14:283(A)(1) provides, in pertinent part that:
A. Video voyeurism is … [t]he use of any camera, … or any other image recording device, … for the purpose of … videotaping a person where that person has not consented to the specific instance of … videotaping and either:
(a) It is for a lewd or lascivious purpose.
(b) The observing, viewing, photographing, filming, or videotaping is as described in Paragraph (B)(3) of this Section and occurs in a place where an identifiable person has a reasonable expectation of privacy.

In fact, Appellant refused to send the videos to Appellee, even in response to discovery requests. This refusal became the subject of a motion to compel filed by Appellee. In short, the record clearly shows that Appellant never transferred the videos that are the subject of Appellee's petition and police complaint.

As noted above, Appellee moved from his apartment on or before September 10, 2024, at least three days[6] before he filed his petition. There is no evidence that Appellee had any contact with the Appellant after he relocated from her property. When he signed it, the Appellee signed an affirmation under explicit penalty of perjury that he "believes that the defendant poses a threat to [his] safety and/or to others for whom I have requested relief." Having vacated the apartment where all the relevant interactions occurred, Appellee supplied no proof whatsoever to support the allegation / affirmation that Appellant posed any threat to his safety at the time of filing.

On the form petition he filed, Appellee placed an "X" in a box that falsely indicated his gender as female.

After Appellee testified on his own behalf on November 21, 2025, it became apparent that he could not carry his burden of proof based on his testimony. In particular, his allegation that his activities had been recorded in a place where he had a reasonable expectation of privacy was defeated by his admission that his intimate activities were performed in an area of his apartment that was clearly visible to the public. Appellee admitted in testimony that he had curtains that could have been used to protect his privacy but did not use them at the time in question. As noted above, Appellee voluntarily dismissed his claims only three

---

[6] Cresson's reconventional demand recites that Appellee moved out of the apartment on September 1, 2024 (13 days before the petition was filed); however, there was no proof adduced at trial to rebut or support the allegation.

days prior to the date on which the parties were scheduled to appear for the conclusion of the trial.

***Standard of review***

In Appellant's answer and reconventional demand, she sought a declaration that Appellee's petition was frivolous. Appellant also sought relief in the form of court costs and attorney's fees as sanctions for the frivolous filing. The trial court declared that Appellee's filing was not frivolous and denied sanctions. Whether or not a lawsuit is frivolous is a mixed determination of fact and law. The trial court's decision on this issue is reviewed under the manifest error standard. *Pierce v. Buck Kreihs Co., Inc.*, 22-0848, p. 4 (La. App. 4 Cir. 7/31/23), 371 So.3d 534, 537.

> La. C.C.P. art. 863 provides in pertinent part that:
>
> B. … the signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:
>
> …
>
> (3) Each allegation or other factual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
> D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification … an appropriate sanction which may include an order to pay to the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees.

In this case, Appellee made allegations that he knew or should have known were false. He admitted at trial that he had no evidence to prove his allegation that Appellant recorded his activities out of prurient interest. In violation of art. 863, Appellee had no evidence to make this allegation nor did he conduct any discovery

8

attempting to prove it. Appellee falsely asserted that Appellant had sent him an electronic communication of obscene materials even though he presented no evidence to demonstrate that any electronic communication was sent. In fact, Appellee acknowledged that Appellant never sent him any electronic communications and refused to electronically transfer any photographs or videos when he requested that she do so. These allegations, when taken together, constitute clear violations of art. 863. To hold otherwise is clearly wrong and manifestly erroneous.

### *Conclusion and decree*

As a direct result of Appellee's false filing, Appellant was required to expend significant amounts of time preparing a defense and appearing in court for motions and a trial. The language of La. C.C.P. art. 863(D) is mandatory. It requires a court to impose sanctions when the provisions of the rule are violated.

At the hearing on Appellant's request for sanctions, she indicated that she had spent $500 in court costs. Appellant's testimony and the court record contain evidence of her attendance at court proceedings on five separate occasions. In addition, she filed an answer and reconventional demand and substantial memoranda on various legal issues before the court. Finally, Appellant filed her original brief and a reply brief in this appeal. Based on the circumstances revealed in the record, we reverse the judgment of the trial court and hold that Appellee's petition was false and frivolous. In keeping with the mandate of La. C.C.P. art. 863, we render an award of sanctions in the amount of $5,000 inclusive of court costs and attorney's fees.

**REVERSED AND RENDERED**

9